**IN THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA**

| | |
|---|---|
| SOLIMAR LAMEDA, as parent and next friend of S.L., a minor child, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| INDEPENDENT SCHOOL DISTRICT NO. 29 OF CLEVELAND COUNTY a/k/a NORMAN PUBLIC SCHOOLS, a Political Subdivision of the State of Oklahoma; KRISTINA GRAY; HOLLY NEVELS; and LORI HOLLINGSWORTH; | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. CJ-2021-22 W

Attorney Lien Claimed

STATE OF OKLAHOMA } S.S.
CLEVELAND COUNTY }
**FILED**
JAN 11 2021
In the office of the
Court Clerk MARILYN WILLIAMS

**PETITION**

**COMES NOW** the Plaintiff, Solimar Lameda, as Parent and Next friend of S.L., a

minor child, by and through her attorneys of record, and for her cause of action against the

Defendants, Independent School District No. 29 of Cleveland County a/k/a Norman Public

Schools ("NPS"), Kristina Gray, Holly Nevels, and Lori Hollingsworth states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Solimar Lameda is a resident of Cleveland County, Oklahoma, and

mother of minor child S.L., also a resident of Cleveland County, Oklahoma.

2. Defendant NPS is a political subdivision, organized and existing under the laws

of the State of Oklahoma, with its facilities and schools in Mayes County, Oklahoma.

3. Upon information and belief, Defendant Kristina Gray was and is a resident of

Cleveland County, Oklahoma at all times relevant hereto. During all times herein, Defendant

Gray, the Principal of Norman North High School ("NNHS"), operated by Defendant NPS,

was an agent and/or employee of Defendant NPS, acting within the scope, course and

**EXHIBIT
1**

authority of her employment with NPS.

4.   Upon information and belief Defendant Holly Nevels was and is a resident of Cleveland County, Oklahoma at all times relevant hereto. Defendant Nevels is sued in her individual capacity as Title IX coordinator for NPS and was at all times relevant hereto an agent and/or employee of Defendant NPS, acting within the scope, course and authority of her employment with NPS.

5.   Upon information and belief Defendant Lori Hollingsworth was and is a resident of Cleveland County, Oklahoma at all times relevant hereto.

6.   NPS is responsible for all facets of school operations and programs within the City of Norman school district, including the staffing and training of key positions, such as school administrators and Title IX coordinators.

7.   The events and occurrences that give rise to this cause of action stem from an incident that occurred in Cleveland County, Oklahoma, on or about March 15, 2019.

8.   On April 18, 2020, Defendant NPS was timely placed on notice of Plaintiff's tort claims in conformance with the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. § 156.

9.   Defendant NPS took no formal action upon the Tort Claim Notice and the same was deemed denied ninety (90) days thereafter and, pursuant to Okla. Stat. tit. 51 § 157, this action is timely filed.

10. This Court has jurisdiction and venue is proper in Cleveland County, Oklahoma.

## FACTUAL ALLEGATIONS

### THE SEPTEMBER 27, 2019 SEXUAL ASSAULT OF S.L.

11. Paragraphs 1-10 are incorporated herein by reference.

12. S.L.is a minor who at all relevant times was a high school student at NNHS located in Norman, Oklahoma.

13. NNHS is a school managed and operated by Defendant NPS. Thus, at all pertinent times, NNHS was under the control and supervision of Defendant NPS.

14. A special relationship exists between Defendant NPS and the students entrusted to its care, including S.L.

15. In September of 2019, S.L. was a freshman in high school and a member of the NNHS varsity debate team. Morgan Russell (hereinafter "Ms. Russell") was the head coach of the NNHS debate team at that time.

16. On September 27, 2019, the NNHS debate team had a debate tournament in Edmond , Oklahoma. Both the male and female members of the NNHS Debate team were transported to and from the tournament in Edmond by NPS *via* a single school bus.

17. At approximately 11:00 p.m., on the night in question, S.L. was sitting by herself on the school bus talking with a number of classmates seated nearby, including L.G.

18. L.G. was assigned to sit in the seat behind S.L., but was allowed to move to sit next to another student, who was sitting across the aisle of the bus from S.L.

19. As the bus ride went along L.G. began to touch S.L.'s leg and backside. S.L. was in shock, as she considered L.G. a friend and did not know how to react so she remained frozen as he assaulted her. L.G. continued touching S.L. by attempting to place his hand inside of S.L.'s pants.

20. S.L. asked L.G. to stop touching her, but her requests were ignored and L.G. proceeded to place his hands inside of S.L.'s sweatshirt and grab her chest. L.G.

21. At this point, L.G. became more forceful and grabbed S.L.'s hand and placed it

inside of his pants, near his crotch.

22. When L.G. was done assaulting S.L., he told her that she could not tell anyone what had happened, or he would take actions against her and her friends.

23. There was no supervision of the students in the back of the bus during the bus ride. NNHS teacher Morgan Russell was seated on the front of the bus, nowhere near the students in the back.

24. When the bus arrived back at NNHS, S.L. quickly gathered her things and rushed off of the bus and into her mother's car so she could go home. S.L. was understandably in shock because of the assault and because of the fear and shame associated with sexual assault did not tell anyone about what had occurred.

25. The debate tournament in Edmond continued to the next day, September 28, 2019 and S.L. was expected to be there to compete.

26. S.L. did not feel like going to the tournament after what had happened the night before, but she did not want to raise any questions, so she did her best to ignore what happened and had her father drive her to Edmond for the debate tournament.

27. Upon arriving to the tournament on Saturday September 28, 2019, L.G. began following S.L. around threatening her not to speak of the assault that had occurred the previous night.

28. The trauma of the assault was too much, and S.L. made the decision to confide in her friends regarding the assault at the debate tournament. Eventually word got around to Ms. Russell that S.L. was upset, so Ms. Russell and another NPS teacher, Lori Crawford, pulled S.L. aside to ask her about what had happened.

29. When S.L. was alone with Ms. Russell and Ms. Crawford, she finally felt safe to

explain what L.G. had done to her on the bus.

30. When the debate tournament was over on September 28, 2019, S.L. rode home on a NPS bus which was carrying only female students and Ms. Russell sat across from S.L.

**PROTECTIVE ORDER MATTER**

31. Paragraphs 1-30 are incorporated herein by reference.

32. Following the assault, Plaintiff filed a Motion for a Protective Order on S.L.'s behalf against L.G. on October 4, 2019, in the Cleveland County District Court. *See* PO-19-707.

33. The Court scheduled a Protective Order Hearing for November 5, 2019, in order to hear the merits of Plaintiff's request.

34. During the November 5, 2019 hearing, L.G. admitted to inappropriately touching S.L. Due to L.G.'s testimony, the Cleveland County Court entered a protective order against L.G. that was to remain in effect until November 5, 2021.

35. The Court found that "[L.G.] represents a credible threat to the physical safety" of S.L.

36. The Protective Order entered on November 5, 2019 specifically prohibits L.G. from:

    a)    "having ANY CONTACT whatsoever with [S.L.], either in person, through others or by telephone, mail, electronic means, or any other manner, at any time or place unless specifically authorized by this court."

    b)    "injuring, abusing, sexually assaulting, molesting, harassing, stalking, threatening or otherwise interfering with the protected person(s), and from use, attempted use or threatened use of physical force against the protected

person(s) that would reasonably be expected to cause bodily injury."

c)      "engaging in other conduct that would place [S.L.] in reasonable fear of bodily

injury…"

37. Plaintiff immediately provided NNHS with a copy of the Protective Order so that

they were aware of the Court's findings.

**NPS'S INADEQUATE RESPONSE TO THE SEPTEMBER 27, 2019 INCIDENT**

38. Paragraphs 1-37 are incorporated herein by reference.

39. On September 30, 2019, S.L. met with NNHS' Student Advocacy Coordinator,

Defendant Lori Hollingsworth, for approximately three (3) hours, describing the incident

with L.G.

40. Multiple NNHS students, including L.G., were interviewed about the incident on

October 1, 2019 and October 2, 2019.

41. On November 11, 2019, after having received the Cleveland County Court's

Protective Order, Defendant Kristina Gray, the principal of Norman North High School,

published NNHS' official Title IX investigative report in response to the assault.

42. The ultimate conclusion of Defendant Gray's investigation was that "the students

were equally responsible for behavior that, at the time of events, appeared to be consensual."

43. Defendant Gray relied on the below factors in support of her conclusion that L.G.

had not bullied, harassed, or assaulted S.L.:

a)      "[T]he timing of [S.L.'s] report[1];

b)      "[T]here are no signs that [S.L.] was unhappy, attempting to scoot away from

[L.G.], attempting to move back in her seat, attempting to relocate to the

---

[1]      Apparently suggesting that somehow S.L.'s allegations were less believable because they were not
reported until the day after the assault.

empty seat adjacent to her, or taking other action to separate from [L.G.].

c)   "[S.L.]'s concern for the effect of the incident on her boyfriend."[2]

44. Defendant Gray indicated to Plaintiff that L.G. admitted in his statement to NPS that he touched S.L. inappropriately. Furthermore, Defendant Gray was aware of the Protective Order whereby a Cleveland Court Judge had found enough evidence to justify the entry of the Order based on L.G.'s admissions in court. However, the Title IX report completed by Defendant Gray omits both the Protective Order and L.G.'s admissions that he inappropriately touched S.L.

45. The remedial actions enumerated in Dr. Gray's investigation included NNHS providing "a plan for avoidance of contact between the 2 students and designation of administrative or safe contacts to promptly make if contact occurs."

46. Frustrated with the result of the investigation, Plaintiff appealed the findings of Defendant Gray's Title IX investigation. Defendant Nevels, NPS's Title IX Coordinator to whom the appeal was made, deferred to Gray's findings and denied Plaintiff's appeal.

47. As a result of the trauma of the incident, S.L. did not attend school from approximately September 30, 2019 until the end of the semester.

48. When S.L. started school again in January, Plaintiff was told that the school would implement a "safety plan" to keep S.L. from encountering L.G. while at school.

49. However, no such plan was implemented and S.L. was forced to be in the presence of L.G. on a regular basis.

50. Plaintiff and S.L. complained to Defendant Hollingsworth, the Title IX Student Advocate assigned to S.L., on a number of occasions regarding L.G.'s continued encounters

---

[2]   Appearing to suggest that S.L.'s motivation for alleging L.G. had assaulted her was driven by fear that her boyfriend would be upset about her interaction with L.G.

with S.L., but the problems have not been remedied.

51. Despite having actual knowledge that L.G. and his friends were harassing and retaliating against S.L. for reporting the incident on the bus, Defendants allowed L.G. to continue classes at NNHS unrestricted and remain in the presence of S.L.

52. Defendants offered S.L. limited or no assistance to help her cope with being a victim of sexual violence by a fellow student she was forced to be around daily at NNHS.

### HISTORY AND PURPOSE OF TITLE IX

53. Paragraphs 1-52 are incorporated herein by reference.

54. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 (a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

55. At all material times, NPS was receiving federal funding, as contemplated in Title IX, 20 U.S.C. § 1681, et seq.

56. In *Gebster v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court held that a recipient of Federal funds violates Title IX, and is subject to a private damages action, where the funding recipient is "deliberately indifferent" to known acts of sexual harassment.

57. In 1999, the United States Supreme Court determined that schools may be held liable in private actions brought under Title IX for monetary damages when they are deliberately indifferent to student-against-student sexual misconduct and harassment. *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999).

58. *Davis* held that a complainant may prevail in a private Title IX damages action

against a school district in cases of student-on-student harassment where

    a) The school district is deliberately indifferent to known sexual harassment;

    b) The harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school; and

    c) The school exercised substantial control over the harasser and the context in which the harassment occurred.

        *Davis*, 526 U.S. at 645–46, 650.

## OKLAHOMA ANTI-BULLYING LAW AND DISTRICT POLICIES

59. Paragraphs 1-58 are incorporated herein by reference.

60. Oklahoma's School Safety and Anti-Bullying Act ("Anti-Bullying Act") requires all public schools in the state to adopt a policy for investigating and responding to reports of bullying. 70 O.S. § 24-100.4.

61. The Anti-Bullying Act defines bullying as "any pattern of harassment, intimidation, threatening behavior, physical acts or communication (verbal or electronic) that is directed toward a student or group of students that results in or is reasonably perceived as being done with the intent to cause negative educational or physical results for the targeted individual or group and is communicated in such a way as to disrupt or interfere with the school's educational mission or the education of any student." 70 O.S. § 24-100.3

62. NPS adopted the Anti Bullying Act's definition of "bullying."

63. NPS Board Policy 4002 prohibits "bullying or harassment in any form" and "harassment based on his/her race, color, creed, disability, sex, sexual orientation, age, religion or any other personal characteristic."

64. NPS Board Policy 4001 defines sexual harassment as "repeated and unwelcome sexual advances, requests for sexual favors, or verbal, physical or other sexually offensive conduct…"

65. The NPS bullying policy further states that bullying is prohibited at both school and school sponsored events, specifically including "while traveling to and from school."

**NPS'S HISTORY AND PRACTICE**

66. Paragraphs 1-65 are incorporated herein by reference.

67. NPS was on notice that sexual harassment was a specific, recent, and recurring problem among its students at the time of the assault at issue herein.

68. For instance, on November 24, 2014 hundreds of NPS students, parents, and others organized a protest at Norman High School in response to the district's poor handling of four rape allegations against a Norman High student that had gone unpunished.

69. The issue at NNHS and NPS is systemic. Consent is not a value, coercion is the baseline, and victims are not believed.

70. Despite clear notice by the U.S. Supreme Court and the U.S. Department of Education's Office of Civil Rights ("OCR") regarding Defendant NPS' obligations to prevent and remediate the effects of sexual harassment, at all times relevant hereto NPS, Defendant Gray, and Defendant Nevels failed to provide training or education to administrators, staff, students, and parents regarding Title IX, student-against student sexual harassment, interviewing victims and potential witnesses of sexual harassment, investigating reports of sexual harassment, remediating sexual harassment and violence, proper reporting of suspected sexual harassment or violence to NPS employees, and prohibition on retaliating against students who report sexual assault.

71. The Defendants escalated the already hostile educational environment S.L. suffered when they failed to comply with their own policies in handling S.L.'s reports of sexual harassment and retaliatory harassment.

72. The Defendants escalated the hostile educational environment S.L. suffered when they failed to appoint an independent investigator to promptly investigate S.L.'s report of having been assaulted by another student.

73. The Defendants escalated the hostile educational environment S.L. suffered by conducting an investigation that was superficial, biased, cursory, and based on unfounded conclusions.

74. The Defendants escalated the hostile educational environment S.L. suffered when they failed to provide S.L. adequate emotional psychological support after it was discovered that S.L. had been assaulted by another NPS student.

75. The Defendants' response and conduct in response to S.L.'s allegations was such that future reasonable students in S.L.'s circumstances would be chilled from reporting sexual harassment.

### IMPACT OF UNCHECKED HARASSMENT AND BULLYING ON S.L.

76.    Paragraphs 1-75 are incorporated herein by reference.

77.    Given NPS' deliberate indifference through its appropriate persons, S.L. was deprived access to the educational benefits and/or opportunities provided by NPS in that, inter alia:

a)    S.L. missed a significant number of school days following the sexual assaults and bullying by L.G., S.L. missed school not merely by choice, but out of sheer

fear and psychological torment thrust upon her by L.G. and NPS' deliberate indifference to remedy the situation;

b)   S.L. struggled significantly in her classes following the sexual assaults and bullying by L.G.;

c)   S.L. became so psychologically tormented by the sexual assault and bullying by L.G. that S.L. cannot feel safe while attending school at NNHS.

d)   S.L. became so psychologically tormented by the Defendants' deliberate indifference to protect her that she cannot feel safe while attending school at NNHS;

e)   S.L. became so psychologically tormented by other students' teasing of her due to L.G.'s behavior that he could no longer feel safe or welcome at NNHS.

78. S.L. missed out on her right to a school and education and academic help due to her based on the Defendants' failure to provide a safe environment because the perpetrator continued to be in school with S.L.

79. S.L. has required ongoing counseling to address her depression and anxiety caused by Defendants' conduct and the resulting harassing educational environment.

80. S.L. has been deprived of a normal childhood education due to Defendants' conduct and the resulting educational environment. S.L. has also been damaged by missed educational opportunities and her future earning capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

81. As a direct and proximate result of the harassing educational environment created by Defendants' deliberately indifferent response to the sexual assault and subsequent harassment, as well as violations other Fourteenth Amendment rights, S.L. has suffered and

continues to suffer psychological damage, emotional distress, loss of standing in her community, and damage to her reputation, and her future relationships have been negatively affected, and she has lost her educational opportunity. Additionally, S.L. and her parents have lost time from work/school and have incurred actual damages.

## CAUSES OF ACTIONS

### I. NEGLIGENCE AS TO DEFENDANT NPS

82. Paragraphs 1-81 are incorporated herein by reference.

83. Defendant NPS owed a duty to S.L., as well as all other students, to provide an educational setting that was safe, secure, and free from harassment, intimidation, abuse, unwanted touching and bullying for all of its students while involved in extra-curricular activities.

84. Defendant NPS, by and through its employee(s), staff or agents breached these duties by failing to properly protect S.L., failing to ensure that its agents were appropriately disciplining and supervising students, and by allowing S.L. to be harassed by fellow students.

85. NPS further breached its duties to S.L. by violating of one or more Oklahoma Statutes, including, but not limited to 70 O.S. § 24-100.4, by failing to provide a safe and respectful learning environment for S.L. and by its inaction once it was confirmed that S.L. had been victimized.

86. S.L. is in the class of persons intended to be protected by the Oklahoma statutes related to school bullying.

87. The statutes and ordinances the Defendants violated were intended to prevent the bullying and harassment suffered by S.L.

88. These breaches by the Defendants were the actual and proximate cause of S.L.'s

injuries.

89. As a result of Defendant NPS's negligence, S.L. has suffered personal injury, mental pain and suffering, emotional distress and other actual damages in excess of seventy-five thousand dollars ($75,000.00).

## II. NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION AS TO DEFENDANT NPS

90. Paragraphs 1-89 are incorporated herein by reference.

91. Defendant NPS owed a duty to S.L. and all other students to hire qualified, competent employees to teach, coach, and supervise the students of that community. Defendant owed a duty to train and supervise any and all employees in how to supervise and protect students.

92. Additionally, by failing to properly hire, train, supervise and retain its employees in the reasonable administration of its extra-curricular activities, Defendant acted with reckless disregard for the health and well-being of S.L. and others, and breached the duty owed to S.L.

93. These breaches were the actual and proximate cause of S.L.'s injuries.

94. As a result of Defendant NPS's negligence, S.L. has suffered psychological damage, emotional distress, loss of standing in her community, and damage to her reputation, and her future relationships have been negatively affected, and she has lost her educational opportunity and actual damages in excess of seventy-five thousand dollars ($75,000.00).

## III. VIOLATION OF TITLE IX AS TO NPS
### NPS' DELIBERATE INDIFFERENCE TO ALLEGED SEXUAL HARASSMENT
### (20 U.S.C. § 1681, ET SEQ.)

95. Paragraphs 1-94 are incorporated herein by reference.

96.     The sex-based harassment articulated in the Plaintiff's Factual Allegations was so severe, pervasive, and objectively offensive that it deprived S.L. access to educational opportunities or benefits provided by the school.

97.     The NPS, created and/or subjected S.L. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

a)      S.L. was a member of a protected class;

b)      S.L. was subjected to sexual harassment in the form of a physical assault, name calling, threats, and being put in the presence of her assailant;

c)      S.L. was subjected to a harassment based on her sex; and

d)      S.L. was subjected to a hostile educational environment created by the School District's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment and threats and damage to S.L.

98.     The Defendants had actual knowledge of the sexual assault and the resulting harassment of S.L. created by their failure to investigate and discipline S.L.'s attacker in a timely manner and consistent with NPS's own policy and with federal and state law.

99.     The Defendants failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and chose instead to act with deliberate indifference toward S.L.

100.    The Defendants persisted in their actions and inaction even after they had actual knowledge of the harm suffered by S.L.

101.    The Defendants engaged in a pattern and practice of behavior designed to

discourage and dissuade students who had been sexually assaulted and their parents from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

102.     This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

103.     Given NPS' deliberate indifference through its appropriate persons, S.L. was deprived access to the educational benefits and/or opportunities provided by NPS in that, inter alia:

    a)    S.L. missed a significant number of school days following the sexual assaults and bullying by L.G., S.L. missed school not merely by choice, but out of sheer fear and psychological torment thrust upon her by L.G. and the Defendants' deliberate indifference to remedy the situation;

    b)    S.L. struggled significantly in her classes following the sexual assaults and bullying by L.G.

    c)    S.L. became so psychologically tormented by the sexual assaults and bullying by L.G. that S.L. cannot feel safe while attending school at NNHS.

    d)    S.L. became so psychologically tormented by the Defendants' deliberate indifference to protect her that she cannot feel safe while attending school at NNHS.

    e)    S.L. became so psychologically tormented by other students' teasing of her due to L.G.'s behavior that he could no longer feel safe or welcome at NNHS

104.     As a direct and proximate cause of the Defendants deliberate indifference to S.L.'s rights under Title IX, S.L. has suffered emotional distress, psychological damage, and

her character and standing in her community have suffered from the harassment fostered because of NPS' deliberate indifference to her rights under Title IX.

### IV.  VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES' PROMISE OF EQUAL PROTECTION AS TO ALL DEFENDANTS (42 U.S.C. § 1983)

105.    Paragraphs 1-104 are incorporated herein by reference

### A. Underlying Violations of Constitutional Rights (Against Individual Defendants)

106.    Under the Equal Protection Clause of the Fourteenth Amendment, S.L. had the right to equal access to an educational environment free from harassment and discrimination.

107.    An individual school official violates the Equal Protection Clause and is subject to a claim under § 1983 where the official exhibits "deliberate indifference to known sexual harassment." *Murrell v. School District No. 1*, 186 F. 3d 1238, 1250 (10th Cir. 1999).

108.    Defendants Gray, Nevels, and Hollingsworth knew, or should have known, that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

109.    NPS employees, including Defendants Gray, Nevels, and Hollingsworth, each violated S.L.'s right to equal access by:

a)  Failing to take immediate and appropriate actions to investigate or otherwise determine what occurred once informed of possible sexual violence;

b)  Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c)  Failing to take steps to protect S.L. as necessary, including interim steps taken

prior to the final outcome of the investigation;

d) Failing to provide an adequate grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.

110.   Defendants Gray, Nevels, and Hollingsworth failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward S.L.

111.   The Defendants failure to promptly and appropriately respond to the alleged sexual harassment, resulted in S.L., on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program.

**B. Municipal / "Monell" Liability (Against NPS)**

114.   In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) the U.S. Supreme Court recognized that a municipality may be held liable for damages under § 1983.

115.   Applying *Monell*, the Tenth Circuit in *Murrell* explained that a school district may be liable for student on student sexual harassment under § 1983 when a school "employee's discriminatory actions are representative of an official policy or custom of the [school district], or are taken by an official with final policy making authority." 186 F.3d at 1249.

116.   NPS has and/or had unconstitutional customs or policies of allowing sexual assaults to occur to NPS students, failing to investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right to personal security and bodily integrity and failing to adequately train and supervise School

District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

117.    The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

118.    Defendants' actions and lack of actions were the proximate cause of S.L.'s emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant School District's deliberate indifference to her right to equal protection under the Fourteenth Amendment

119.    S.L. has suffered emotional distress and psychological and physical damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under the Fourteenth Amendment.

**WHEREFORE,** based on the foregoing, Plaintiff prays that this Court grant the relief sought including, but not limited to actual damages, including mental and physical pain and suffering; and all other relief deemed appropriate by this Court.

Respectfully submitted,

SMOLEN | LAW, PLLC

Donald E. Smolen, II, OBA#19944
Laura L. Hamilton, OBA#22619
Jack Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
laura@smolen.law
jack@smolen.law
*Attorneys for Plaintiff*